**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

| | |
|---|---|
| DEBORAH ABBA, Individually and For All Others Similarly Situated<br><br>    v.<br><br>MINDLANCE HEALTH LLC | Civil Case No. _____<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action<br>FLSA Collective Action |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Deborah Abba ("Abba") brings this class and collective action to recover untimely wages, unpaid overtime wages, and other damages from Mindlance Health LLC ("Mindlance").

2.      Mindlance is a healthcare staffing firm that employs numerous people in New York State, a majority of whom are "manual workers" as contemplated by § 191 of the New York Labor Law ("NYLL").

3.      For example, Mindlance employed Abba as one of the Patient Care Workers (defined below) in Brooklyn, New York.

4.      Despite being manual workers, Mindlance fails to properly pay Abba and the other Patient Care Workers their wages within seven calendar days after the end of the week in which they earned such wages.

5.      Instead, Mindlance uniformly pays Abba and the other Patient Care Workers on a bi-weekly basis.

6.      In this regard, Mindlance failed to timely pay earned wages to Abba and the other Patient Care Workers.

7.      As manual workers, Abba and the other Patient Care Workers are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955).

1

8.    Accordingly, Mindlance's failure to timely pay wages owed to Abba and the other Patient Care Workers constitutes an "especially acute injury" under NYLL § 191. *See Caul v. Petco Animal Supplies, Inc.,* No. 20-CV-3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 [N.Y. 1st Dept. 2019]).

9.    Additionally, Mindlance does not pay Abba and the other Patient Care Workers for all the hours they work.

10.    Instead, Mindlance requires Abba and the other Patient Care Workers to complete training modules before and/or after their regularly scheduled shifts. (Mindlance's "training policy").

11.    Completing each training module takes Abba and the other Patient Care Workers approximately 1 to 3 hours "off the clock."

12.    Abba and the other Patient Care Workers are thus not paid for this time.

13.    Mindlance's training policy violates the Fair Labor Standards Act (FLSA) and NYLL by depriving Abba and the other Patient Care Workers of overtime compensation for hours worked in excess of 40 each workweek.

## JURISDICTION & VENUE

14.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

15.    This Court also has supplemental jurisdiction over the state-law class claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

16.    Additionally, this Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

17.    Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of Abba's proposed class of Patient Care Workers and Mindlance are citizens of different states

(indeed, Abba is a New York citizen, whereas Mindlance is a New Jersey citizen); and (c) the proposed class of Patient Care Workers exceeds 100 members.

18.     This Court has specific personal jurisdiction over Mindlance with respect to this action because Mindlance employed Abba and the other Patient Care Workers in New York.

19.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

20.     Specifically, Mindlance employed Abba at Kings County Hospital, which is located in Brooklyn, New York, which is in this District and Division.

**PARTIES**

21.     Mindlance employed Abba as a patient care assistant from approximately November 2021 through March 2024.

22.     Throughout her employment, Mindlance classified Abba as non-exempt and paid her by the hour.

23.     Mindlance paid Abba on a bi-weekly basis.

24.     Throughout her employment, Mindlance subjected Abba to its training policy.

25.     Mindlance failed to pay Abba for her hours worked completing required training modules.

26.     Abba brings this class and collective action on behalf of herself and other similarly situated Patient Care Workers whom Mindlance subjected to its training policy and/or failed to timely pay their earned wages.

27.     The putative FLSA collective of similarly situated employees is defined as:

> **All hourly patient care assistants and similar employees who worked for Mindlance in New York who were required to complete training modules during the past 3 years. (the "FLSA Collective Members").**

28.     The putative class of similarly situated employees is defined as:

> **All employees who worked for Mindlance in New York as hourly patient care assistants and similar employees who were paid on a bi-weekly basis during the past 6 years and 228 days[1] (the "New York Class Members").**

29.    The FLSA Collective Members and New York Class Members are collectively referred to as the "Patient Care Workers."

30.    The Patient Care Workers can be readily ascertained from Mindlance's business and personnel records.

31.    Mindlance is a New Jersey limited liability company headquartered in Union, New Jersey.

32.    Mindlance may be served through its registered agent: **Mindlance Inc., 1095 Morris Avenue, Suite 101A, Union, New Jersey 07083.**

COVERAGE UNDER THE FLSA

33.    At all relevant times, Mindlance has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

34.    At all relevant times, Mindlance has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r)(2)(A).

35.    At all relevant times, Mindlance has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because Mindlance provides healthcare staffing and consulting services. 29 U.S.C. § 203(s)(1)(B).

---

[1] This class period is due to Governor Cuomo's Executive Orders that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for a total of 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law); *McLaughlin v. Snowlift Inc.***,** 71 Misc. 3d 1226(A) (Sup. Ct., Kings Cnty. 2021) (calculating that, together, Governor Cuomo's Executive Orders lasted 228 days).

36.     At all relevant times, Mindlance has had an annual gross volume of sales made or business done of at least $1,000,000.

37.     At all relevant times, Mindlance has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cellphones, computers, tablets, personal protective equipment, etc. – that have been moved in or produced for commerce.

38.     At all relevant times, Abba and the other FLSA Collective Members have been Mindlance's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e)(1).

39.     At all relevant times, Abba and the other FLSA Collective Members were engaged in commerce or in the production of goods for commerce.

40.     Mindlance requires Abba's and the other FLSA Collective Members to complete training modules "off the clock" without compensation under its training policy.

41.     As a result, Mindlance fails to pay Abba and the FLSA Collective Members for all hours worked.

42.     Mindlance's training policy deprives Abba and the other FLSA Collective Members of overtime compensation during workweeks they work over 40 hours. 29 U.S.C. § 207(a) & (e).

43.     As a result, Mindlance fails to pay Abba and the FLSA Collective Members overtime wages at rates not less than 1.5 times their regular rates of pay, for all hours worked in excess of 40 a workweek, in willful violation of the FLSA.

## FACTS

44.     Mindlance bills itself as "[o]ne of the largest staffing firms in the US with a revenue of over $400 Million and an industry leader in healthcare staffing."[2]

---

[2] https://www.mindlancehealth.com/ (last accessed September 12, 2024).

45.     To meet its business objectives, Mindlance employs workers like Abba and the other Patient Care Workers.

46.     While exact job duties and precise work locations may differ, Abba and the other Patient Care Workers are all subjected to Mindlance's same or similar policies, while performing similar work.

47.     For example, Abba worked for Mindlance as a patient care assistant from approximately November 2021 through March 2023 in Kings County Hospital in Brooklyn, New York.

48.     Throughout her employment, Mindlance classified Abba as non-exempt and paid her by the hour.

49.     Mindlance paid Abba approximately $32 an hour.

50.     Abba worked approximately 8 to 10 hours a day for 5 to 6 days a week (40 to 60 hours a workweek).

51.     Throughout her employment, over 25% of Abba's duties were physical tasks, including but not limited to: walking from one patient location to the next, measuring patients' vital signs, drawing blood, transporting samples for testing, assisting patients in and out of hospital beds and wheelchairs, otherwise assisting non-ambulatory patients move and carry out functions of daily life, and standing or otherwise being "on her feet" for extended periods of time.

52.     Despite regularly spending more than 25% of her shifts performing physical tasks, Mindlance fails to timely pay Abba her earned wages.

53.     Instead, Mindlance pays Abba on a bi-weekly basis.

54.     As a result of Mindlance's untimely wage payments, Mindlance has underpaid Abba for the first seven days of each bi-weekly pay period throughout her employment.

55.     For example, Mindlance paid Abba on March 24, 2023 for manual work she performed during the March 6 to March 19, 2023 bi-weekly pay period:




56.     Thus, Mindlance failed to timely pay Abba her wages earned not later than seven days after she earned such wages, as required by NYLL § 191(1)(a), for every other week beginning November 2021 through the termination of her employment in March 2023.

57.     As a result of Mindlance's untimely wage payments, Mindlance underpaid Abba every other week across this entire period.

58.     Mindlance's underpayments denied Abba the time-value of his earned wages. *See Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*, --- F. Supp. 3d. ---, 2023 WL 4457911, at *7 (W.D.N.Y. July 11, 2023) (holding an employee's "lost time value of his wages" from being paid late was an injury in fact).

59.     For example, Abba was unable to invest, save, or purchase, utilizing the wages she earned during the first seven days of each bi-weekly pay period throughout her employment.

60.     Mindlance subjects the other Patient Care Workers to the same policies it imposes on Abba.

61.     Indeed, the other Patient Care Workers perform the same or similar physical job duties as Abba.

62.     Over 25% of the other Patient Care Workers' daily job duties are the same or similar physical tasks that Abba performs.

63.     But like Abba, despite regularly spending more than 25% of their shifts performing

these physical tasks, Mindlance fails to timely pay its other Patient Care Workers their earned wages.

64.     Instead, like Abba, Mindlance pays the other Patient Care Workers on a bi-weekly basis.

65.     As a result of its untimely wage payments, Mindlance likewise underpays the other Patient Care Workers for the first seven days of each bi-weekly pay period.

66.     Thus, like Abba, Mindlance pays its other Patient Care Workers on an untimely basis, in willful violation of the NYLL.

67.     And Mindlance's underpayments similarly deny the other Patient Care Workers the time-value of their money, as they are unable to invest, save, or purchase utilizing the wages they earned and are owed during each underpaid workweek.

68.     And like Abba, the other Patient Care Workers work approximately 50 to 60 hours a workweek.

69.     And Mindlance subjects Abba and the other Patient Care Workers to its training policy.

70.     Specifically, Mindlance requires Abba and the other Patient Care Workers to complete computer based, online training modules "off the clock" and without compensation.

71.     This takes Abba and the other Patient Care Workers 1 to 3 hours when required.

72.     Mindlance fails to exercise its duty to ensure Abba and the other Patient Care Workers are not performing work that Mindlance does not want performed "off the clock" before or after their shifts.

73.     Despite accepting the benefits, Mindlance does not pay Abba and the other Patient Care Workers for the compensable work they perform under its training policy.

74.     Thus, under Mindlance's training policy, Abba and the other Patient Care Workers are denied overtime compensation in workweeks they work over 40 hours.

75.      Mindlance knows Abba and the other Patient Care Workers routinely perform work "off the clock" completing training modules because Mindlance expects and requires them to do so and to report completion of the training to Mindlance.

76.      But Mindlance does not pay Abba and the other Patient Care Workers for this routine "off the clock" work, including hours worked in excess of 40 hours in a workweek, in willful violation of the FLSA and New York law.

77.      MINDLANCE therefore requires, suffers, or permits Abba and the other Patient Care Workers to perform this work "off the clock" and without compensation each workday.

**MINDLANCE'S FLSA AND NYLL VIOLATIONS WERE WILLFUL AND DONE IN RECKLESS DISREGARD OF THE FLSA AND NYLL**

78.      Mindlance knows it is subject to the FLSA, including its overtime provisions.

79.      Mindlance knows it is subject to the NYLL and its supporting regulations, including the overtime provisions and timely payment of wages provisions.

80.      Mindlance knows the NYLL required it to pay manual workers their lawfully earned wages not later than seven calendar days after the end of the week in which such wages are earned.

81.      Mindlance knows Abba and the other Patient Care Workers regularly spend more than 25% of their shifts performing physical tasks.

82.      In other words, Mindlance knows, should have known, or recklessly disregards whether Abba and the other Patient Care Workers were "manual workers" entitled to weekly pay under the NYLL.

83.      Nonetheless, Mindlance does not pay Abba and the other Patient Care Workers their lawfully earned wages within seven calendar days after the end of the week in which they earned such wages.

84.      Instead, Mindlance pays Abba and the other Patient Care Workers on a bi-weekly basis.

85.     In other words, Mindlance knows, should have known, or recklessly disregards whether it failed to timely pay Abba and the other Patient Care Workers their lawfully earned wages in violation of the NYLL.

86.     Mindlance's failure to timely pay Abba and the other Patient Care Workers their lawfully earned wages is neither reasonable, nor is Mindlance's decision to pay these manual workers on a bi-weekly basis made in good faith.

87.     Further, Mindlance knew Abba and the other Patient Care Workers were its non-exempt employees entitled to overtime because Mindlance classified and paid them as such.

88.     Mindlance knew Abba and the other Patient Care Workers are its hourly employees because Mindlance pays them by the hour.

89.     Mindlance knew Abba and the other Patient Care Workers worked more than 40 hours in at least one workweek during the relevant period because Mindlance required them to record their "on the clock" hours worked using its time tracking system.

90.     Mindlance knew the FLSA and NYLL require it to pay Abba and the other Patient Care Workers for all hours they perform compensable work.

91.     Mindlance knew the FLSA and NYLL require it to pay Abba and the other Patient Care Workers overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek.

92.     Mindlance knew it required Abba and the other Patient Care Workers to load, unload, and charge equipment before and after their shifts "off the clock" under its training policy.

93.     Mindlance knew Abba and the other Patient Care Workers complete training modules because Mindlance expects and requires them to.

94.     Mindlance knew Abba and the other Patient Care Workers perform compensable work completing required computer based, online training modules.

95.     Thus, Mindlance knew, should have known, or recklessly disregarded the fact that Abba and the other Patient Care Workers are forced to complete training modules "off the clock" and without compensation.

96.     Mindlance knew that, as Abba's and the other Patient Care Workers' employer, it had a duty to ensure they are not performing work that Mindlance does not want performed before and/or after their shifts.

97.     And Mindlance knew Abba and the other Patient Care Workers worked more than 40 hours in at least one workweek during the relevant period.

98.     Thus, Mindlance knew, should have known, or recklessly disregarded the fact that it did not pay Abba and the other Patient Care Workers for all hours, including overtime hours, they perform compensable work, including the compensable work they perform during their unpaid training.

99.     In other words, Mindlance knew, should have known, or recklessly disregarded the fact that it failed to pay Abba and the other Patient Care Workers overtime wages for all overtime hours worked, in willful violation of the FLSA and NYLL.

100.    Mindlance's failure to pay Abba and the other Patient Care Workers overtime compensation for all overtime hours worked is neither reasonable, nor is the decision not to pay them overtime compensation for all overtime hours worked made in good faith.

101.    Mindlance knows, should have known, or recklessly disregards whether its conduct described in this Complaint violates the FLSA and NYLL.

102.    Mindlance knowingly, willfully, and/or with reckless disregard carried out its policies that systematically deprived Abba and the other Patient Care Workers of their lawfully earned wages in a timely manner and overtime wages, in willful violation of the FLSA and NYLL.

103.    In sum, Mindlance's violations of the FLSA and NYLL are willful, carried out in bad faith, and have caused significant damage to Abba and the other Patient Care Workers.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

104.    Abba brings this action as an FLSA collective action and a class action under FED. R. CIV. P. 23.

105.    Like Abba, the other Patient Care Workers are uniformly victimized by Mindlance's bi-weekly pay scheme and equipment charging policy.

106.    Other Patient Care Workers worked with Abba and indicated they were paid in the same manner, performed the same or similar physical work, and were subject to Mindlance's same bi-weekly pay scheme and training policy.

107.    Based on his experience with Mindlance, Abba is aware Mindlance's practices were imposed on the other Patient Care Workers.

108.    Abba and the other Patient Care Workers have all been injured in that they have been compensated in an untimely manner and failed to receive all earned wages due to Mindlance's common policies, practices, and patterns of conduct.

109.    Indeed, Mindlance's company-wide policies and practices affected Abba and the other Patient Care Workers similarly.

110.    And Mindlance benefitted from the same type of unfair and/or wrongful acts as to each Patient Care Workers.

111.    The putative class of Patient Care Workers includes more than 100 members.

112.    Thus, the putative class of Patient Care Workers is so numerous that the joinder of all class members in one lawsuit is impracticable.

113.    The Patient Care Workers are similarly situated in the most relevant respects.

114.    Even if their precise job titles, exact duties, and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to their lawfully earned wages.

115.    Rather, the Patient Care Workers are held together by Mindlance's bi-weekly pay scheme and training policy, which systematically deprive Abba and the Patient Care Workers of their lawfully earned wages on a timely basis.

116.    Mindlance's records reflect the wages each Hourly Technician earned each workweek.

117.    Mindlance's records also reflect it failed to pay the Patient Care Workers their lawfully earned wages within seven days of the time they completed their work.

118.    The untimely wages and overtime wages owed to Abba and the other Patient Care Workers can therefore be calculated using the same formula applied to the same records.

119.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Mindlance's records, and there is no detraction from the common nucleus of liability facts.

120.    Therefore, the issue of damages does not preclude class or collective treatment.

121.    And Abba's experiences are therefore typical of the experiences of the other Patient Care Workers.

122.    Abba has no interest contrary to, or in conflict with, the interests of other Patient Care Workers that would prevent class or collective treatment.

123.    Like each Hourly Technician, Abba has an interest in obtaining the untimely wages, earned wages, and other damages owed to them under the FLSA and New York law.

124.    Abba and her counsel will fairly and adequately represent the Patient Care Workers and their interests.

125.    Indeed, Abba retained counsel with significant experience in handling complex class and collective action litigation.

126.    A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

127.    Absent this class and collective action, many Patient Care Workers will not obtain redress for their injuries, and Mindlance will reap the unjust benefits of violating the FLSA and New York law.

128.    Further, even if some of the Patient Care Workers could afford individual litigation against Mindlance, it would be unduly burdensome to the judicial system.

129.    Indeed, the multiplicity of actions would create a hardship for the Patient Care Workers, the Court, and Mindlance.

130.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Patient Care Workers' claims.

131.    The questions of law and fact that are common to each Patient Care Workers predominate over any questions affecting solely the individual members.

132.    The common questions of law and fact include:

a.    Whether Mindlance paid the Patient Care Workers their earned wages on a non-weekly basis;

b.    Whether Mindlance paid the Patient Care Workers their lawfully earned wages on an untimely basis in violation of the NYLL;

c.    Whether Mindlance required the Patient Care Workers to work "off the clock" without compensation under its training policy;

d.    Whether Mindlance knew, should have known, or had reason to know, the Patient Care Workers were requested, suffered, permitted, or

allowed to work "off the clock" without compensation under its equipment charging policy;

e.     Whether Mindlance failed to pay its Patient Care Workers overtime for all overtime hours worked, including those worked "off the clock," in violation of the FLSA and NYLL;

f.     Whether Mindlance's decision not to pay the Patient Care Workers their earned wages on a weekly basis was made in good faith;

g.     Whether Mindlance's decision not to pay the Patient Care Workers overtime for all overtime hours worked, including those worked "off the clock," was made in good faith; and

h.     Whether Mindlance's violations were willful.

133.    Abba knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and collective action.

134.    As part of its regular business practices, Mindlance intentionally, willfully, and repeatedly violated the FLSA and NYLL with respect to Abba and the other Patient Care Workers.

135.    Mindlance's bi-weekly pay scheme and training policy deprive Abba and the other Patient Care Workers of lawfully earned wages on a timely basis and overtime wages they are owed under the FLSA and New York law.

136.    There are many similarly situated FLSA Collective Members who have been denied overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

137.    The Patient Care Workers are known to Mindlance and can be readily identified through Mindlance's business and personnel records.

**COUNT I**

15

## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
## (FLSA COLLECTIVE MEMBERS)

138.    Abba brings her FLSA claims on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

139.    Mindlance violated, and is violating, the FLSA by failing to pay Abba and the other FLSA Collective Members overtime wages of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 a workweek, including hours worked "off the clock" before and after their shifts.

140.    Throughout the relevant period, Mindlance has imposed its training policy on Abba and the other FLSA Collective Members.

141.    But throughout the relevant period, Abba and the other FLSA Collective Members were not paid for the time spent completing online, computer based training modules before and after their shifts.

142.    Abba and the other FLSA Collective members have been harmed as a direct and proximate result of Mindlance's unlawful conduct because they have been deprived of wages owed for work that they performed and from which MINDLANCE derived a direct and substantial benefit.

143.    Mindlance knowingly, willfully, and/or in reckless disregard of the FLSA carried out this pattern and practice of failing to pay Abba and the other FLSA Collective Members overtime compensation at the required premium rate for all overtime hours worked.

144.    Mindlance's failure to pay Abba and the other FLSA Collective Members overtime for all overtime hours worked was neither reasonable, nor was the decision not to pay overtime compensation for all overtime hours worked made in good faith.

145.    Accordingly, Abba and the other FLSA Collective Members are entitled to recover the difference between the overtime wages actually paid and the overtime wages actually earned, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL
### (NEW YORK CLASS MEMBERS)

146.    Abba brings her NYLL overtime claims as a class action on behalf of herself and the other New York Class Members pursuant to FED. R. CIV. P. 23.

147.    Mindlance's conduct violates the NYLL and its implementing regulations, NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2.

148.    At all relevant times, Mindlance was subject to the NYLL because Mindlance was a covered "employer" within the meaning of the NYLL. NYLL §§ 190(3) and 651(6).

149.    At all relevant times, Mindlance employed Abba and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2) and 651(5).

150.    The NYLL requires employers, like Mindlance, to pay non-exempt employees, including Abba and the other New York Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

151.    Abba and the other New York Class Members are entitled to overtime pay under the NYLL.

152.    Mindlance violated, and is violating, the NYLL by employing non-exempt employees (Abba and the other New York Class Members) for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek, including hours worked "off the clock" before and after their shifts. *See* NYLL §§ 190, *et seq.* and 650, *et seq.*; 12 NYCRR Part 142-3.2 and 142-3.14.

153.    Mindlance's unlawful conduct harmed Abba and the other New York Class Members by depriving them of the premium overtime wages they are owed.

154.    Mindlance acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

155.    Thus, Mindlance's NYLL violations with respect to Abba and the other New York Class Members were "willful" within the meaning of Section 198 of the NYLL. *See* NYLL § 198.

156.    Accordingly, Mindlance owes Abba and the other New York Class Members the difference between the overtime wages actually paid and the overtime wages actually earned, plus interest on those amount, penalties, and attorneys' fees and costs. *See* NYLL §§ 198(4) and 663(1).

<u>COUNT III</u>

FAILURE TO PAY TIMELY WAGES UNDER THE NYLL
(NEW YORK CLASS MEMBERS)

157.    Abba brings her NYLL 191 § claims as a class action on behalf of herself and similarly situated New York Class Members pursuant to FED. R. CIV. P. 23.

158.    Section 191 of the NYLL requires employers, like Mindlance, to pay manual workers, including Abba and the other New York Class Members, their lawfully earned wages weekly and not later than seven calendar days after the end of the week in which such wages are earned. *See* NYLL § 191(1)(a).

159.    NYLL § 191's timely payment of wages provisions and its supporting regulations apply to Mindlance and protect Abba and the other New York Class Members.

160.    Mindlance violated, and is violating, the NYLL by failing to pay Abba and the other New York Class Members on a timely basis. *See* NYLL § 191(1)(a).

161.    Mindlance's unlawful conduct harmed Abba and the other New York Class Members by depriving them of the earned wages they are owed.

162.    In violating the NYLL, Mindlance acted willfully, without a good faith basis, and with reckless disregard of clearly applicable New York law.

163.    Thus, Mindlance's NYLL violations with respect to Abba and the other New York Class Members were "willful" within the meaning of NYLL § 198.

164.    In *Caul v. Petco Animal Supplies, Inc*, Judge Kovner of the Eastern District of New York held the NYLL's liquidated damages provisions are "designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." No. 20-CV-3534 (RPK)(SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021), *motion to certify appeal denied*, No. 20-CV-3534 (RPK)(SJB), 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) (citing *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).

165.    Accordingly, Abba and the other New York Class Members are entitled to recover the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## JURY DEMAND

166.    Abba demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Abba, individually and on behalf of the other Patient Care Workers, seeks the following relief:

      a.    An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

      b.    An Order certifying a class action pursuant to FED. R. CIV. P. 23;

      c.    An Order appointing Abba and her counsel to represent the interests of the Patient Care Workers;

      d.    An Order finding Mindlance liable to Abba and the other FLSA Collective Members for all unpaid overtime wages owed under the

FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.    An Order finding Mindlance liable to Abba and the other New York Class Members for their unpaid overtime wages owed under the NYLL plus liquidated damages in an amount equal to their unpaid wages;

f.    An Order finding Mindlance liable to Abba and the other New York Class Members for liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

g.    Judgement awarding Abba and the other Patient Care Workers all unpaid and untimely wages, unpaid overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or NYLL;

h.    An Order awarding attorneys' fees, costs, and expenses incurred in this action;

i.    Pre- and post-judgment interest at the highest applicable rates; and

j.    Such other and further relief as may be necessary and appropriate.

Dated: October 15, 2024

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton
111 Broadway, Suite 1503
New York, New York 10006
Phone: (212) 385-9700

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050

Houston, Texas 77046
Phone: 713-352-1100
Fax: 713-352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713-877-8788
Fax: 713-877-8065
rburch@brucknerburch.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR ABBA AND
THE PATIENT CARE WORKERS**

# EXHIBIT 1

## CONFIDENTIAL FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: Deborah M Abba

1.  I hereby consent to make a claim against Midlance Health _____ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against Midlance Health _____.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: Deborah M Abba (Oct 8, 2024 00:01 EDT)          Date Signed: Oct 8, 2024